UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:95cr1 DRL |
| GEORGE R. SOTELO, | |
| Defendant. | |

OPINION AND ORDER

George Sotelo, a prisoner without a lawyer, requests compassionate release. The court ordered the government to respond and to provide his medical records, and the government did so. After an extension, Mr. Sotelo filed a reply. The court afforded the government a surreply, which the government filed on February 24, 2025, along with additional records. Upon consideration of the briefing and record, the court denies the motion.

The First Step Act allows a prisoner to move for a sentence reduction known as compassionate release. The court generally "may not modify a term of imprisonment once it has been imposed," but may do so when "extraordinary and compelling reasons warrant" a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). A defendant requesting release bears the burden of establishing extraordinary and compelling reasons. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). The sentencing guidelines enumerate several circumstances that may be extraordinary and compelling reasons. U.S.S.G. § 1B1.13(b). Release must satisfy the 18 U.S.C. § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021).

In 1995, a jury found Mr. Sotelo guilty on six counts of mailing threatening communications in violation of 18 U.S.C. § 876. While imprisoned after being sentenced in state

court for raping an elderly woman and robbing another, Mr. Sotelo began corresponding with two other elderly women. *United States v. Sotelo*, 94 F.3d 1037, 1038-39 (7th Cir. 1996). When their relationships soured, he mailed letters threatening their lives and harm to their families if they did not continue sending him money. *Id.*

The court (via another presider) sentenced him to an aggregate term of 262 months to run consecutive to his state sentence. In calculating his guideline range, the court determined he was a career offender under U.S.S.G. § 4B1.1 because his conviction was a crime of violence and because of his qualifying criminal history. In 2016, Mr. Sotelo petitioned to vacate his conviction under 28 U.S.C. § 2255, which the court denied. He now seeks compassionate release. He is currently 59 years old and resides at FCI Lewisburg with an expected release date of August 3, 2031. The government agrees that he has exhausted his administrative remedies.

Mr. Sotelo presents several arguments for compassionate release—inadequate medical care, what he views as an unusually long sentence, the realities of COVID and his conditions of incarceration, and his rehabilitation.

A. *Inadequate Medical Care.*

Mr. Sotelo says his circumstances are extraordinary and compelling because he is receiving inadequate medical care for his deteriorating knee and because of a stroke and heart attack. He must show he is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death. U.S.S.G. § 1B1.13(b)(1)(C). He doesn't argue his medical condition substantially diminishes his ability to provide self-care in prison. *See* U.S.S.G. § 1B1.13(b)(1)(B).

Mr. Sotelo says he first reported knee pain in April 2019. He was given a cane and instruction on home exercises [104-2 at 7-10]. He had been using a wheelchair, but he soon

2

progressed to walking unassisted and using stairs, though with discomfort [*id.*]. With pain worsening, his knee was x-rayed in April 2023 [*id.* 11]. In June 2023, medical staff explained the orthopedic physician's assessment that his weight, blood sugar, and blood pressure needed to improve before he could be considered for a knee replacement [*id.* 12]. He was prescribed Ozempic that month [111-2 at 34]. By December 2023, orthopedics noted improvements to his blood sugar levels [111-3 at 63]. He received a steroid injection in February 2024 that he said was wearing off that April [*id.* 54-55].

He was recommended for a knee replacement, but it was initially denied in May 2024 for lack of pre-operative clearances [*id.* 33, 40]. He was cleared by July 2024, and a knee replacement consult was resubmitted [*id.* 30]. By then he had lost weight and maintained his blood sugar improvements [*id.*]. In August 2024, he complained he was frustrated with his medical care and was told that medical staff "are actively attempting to get him approved and scheduled for the knee replacement surgery" [*id.* 18-19].

In January 2025, Mr. Sotelo was waiting to be reevaluated for a knee replacement and received a knee injection for pain relief [119-1 at 7-8]. According to his records, he had regained about 20 pounds since July 2024 but reported using an exercise bike and elliptical, albeit with some pain [*id.* 8, 11]. In February 2025, Mr. Sotelo saw an orthopedic doctor who recommended conservative treatment rather than a knee replacement—weight loss, joint aspiration, and possible steroid injections as needed [*id.* 3].

Mr. Sotelo says he has lived in constant pain since his knee issues arose in 2019. He claims that this pain prevents him from exercising and causes him to gain significant weight. He says he has difficulty standing, bending, walking, squatting, getting up from a seated position, and exercising. He reports that he was notified in October 2024 that his knee replacement surgery

3

was not approved and nothing more could be done to help him, and the Bureau of Prisons (BOP) failed to provide him with records he requested of this denial. He says "absolutely nothing has been done to approve me for receiving a total knee replacement surgery" as of June 2025.

Although requiring ongoing scrutiny and specialized medical care, Mr. Sotelo's knee issues aren't extraordinary or compelling. This record falls short of showing a lack of care or that he is at risk of serious deterioration in health or death. Medical conditions can often be variable, sometimes improving and sometimes worsening, and sometimes altogether changing, and the BOP and medical providers have been nimble in tweaking their regimen of treatment that addresses his changes and manages his conditions. Mr. Sotelo has repeatedly seen orthopedic physicians [104-2 at 12; 111-3 at 63; 119-1 at 3]. He has not shown why his last orthopedist was so wrong in medical judgment to recommend conservative treatment so as to call today's circumstances extraordinary or compelling. *Cf. Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (inmate isn't constitutionally entitled to demand specific care). Mr. Sotelo has received injections for pain management and can return for more when appropriate [111-3 at 55; 119-1 at 3]. His circumstances have improved from the start of his treatment—since 2019 he has gone from wheelchair to walking stairs and using an exercise bike and elliptical [104-2 at 7-10; 119-1 at 8], and he has lost weight (though regained some) and reduced his blood sugar levels [111-3 at 30]. He hasn't made a sufficient showing to warrant compassionate release. *See United States v. Mitchell*, 2023 U.S. Dist. LEXIS 28254, 8-10 (C.D. Ill. Feb. 13, 2023) (inmate's deteriorating knee condition not extraordinary and compelling because it was appropriately managed in prison); *United States v. Vonwille*, 2021 U.S. Dist. LEXIS 85433, 7-8 (D.S.D. May 3, 2021) (same).

To the extent Mr. Sotelo complains of the timeliness of his care, "pauses in care or lack of expedited care . . . are not grounds for a sentence reduction under § 3582(c)(1)(A)." *United*

4

*States v. Merritt*, 2024 U.S. Dist. LEXIS 53557, 10 (S.D. Ind. Mar. 26, 2024); *see also Forbes*, 112 F.3d at 267 (inmate cannot demand "best care possible"). That he hasn't been approved for the knee replacement he desires doesn't mean he isn't receiving treatment, much less that he is at risk of serious deterioration in health or death. An orthopedist assessed his knee, decided conservative treatment was the best course, and provided options for him to manage his condition. In treating inmates, "medical professionals may choose from a range of acceptable courses based on prevailing standards in the field." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quotation omitted) (Eighth Amendment claim).

Mr. Sotelo also says he suffered a stroke in 2018 and a heart attack in 2020. He says the stroke limited his motor function, left him confined to a wheelchair, and caused him continuing vision loss, short-term memory loss, and headaches. He says the BOP hasn't provided him follow-up treatment, physical or speech therapy, or care from a neurologist.

The effects of his stroke are not extraordinary and compelling. Whether his condition warrants long-term specialized care or poses a serious risk—and he hasn't really explained why it does—medical records show he has received treatment. BOP is aware of his physical effects: medical staff note he has "slight left sided weakness," but his mobility is unaffected [111-3 at 140]. He was nonetheless given a cane and instructed in home exercises; today he is no longer wheelchair bound and can exercise [104-2 at 7, 9; 119-1 at 8]. Though he has vision problems, the court cannot say his imprisonment limits his ability to obtain care because he refuses to wear his glasses [111-3 at 19]. Whether he had headaches or memory problems in the past, they seem to have stopped as of October 2024 [*id.* 1, 140]. Though he may have speech issues [*id.* 140], Mr. Sotelo neither argues nor presents evidence that failure to address them puts him at serious risk of deteriorating health.

5

Adding his 2020 heart attack to this collective picture of his health doesn't make his case extraordinary or compelling. Mr. Sotelo says he received treatment in the emergency room and hospital and had a catheter placed in his heart. He describes no continuing issues, and chest x-rays in April and October 2024 revealed no heart disease [111-3 at 157, 178]. Given these findings, the court cannot say his condition requires long-term or specialized care or poses a serious risk; and, in any event, he has received effective care. A stroke and heart attack are certainly nothing to sneeze at, and often they require time and concerted care to recover, but he seems well on his way. Considering his knee issues, stroke, and heart attack, he hasn't shown an extraordinary and compelling medical condition. This cannot serve as a basis for compassionate release.

B.  *Unusually Long Sentence.*

Next, Mr. Sotelo says he received an unusually long sentence. U.S.S.G. § 1B1.13(b)(6) says a petitioner's situation may be extraordinary and compelling if he received an "unusually long sentence," has served at least ten years of that sentence, and a change in the law has occurred that would "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," considering a defendant's individualized circumstances. The provision has been appropriately narrowed. *See United States v. Black*, 131 F.4th 542, 546 (7th Cir. 2025); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021).

Mr. Sotelo says his convictions for mailing threatening communications under 18 U.S.C. § 876 are no longer crimes of violence and his offense of conviction wouldn't then make him a career offender under today's law. He cites *Borden v. United States*, 593 U.S. 420, 445 (2021), which explained that "[o]ffenses with a *mens rea* of recklessness [will] not qualify as violent felonies under" the Armed Career Criminal Act (ACCA). To the extent he challenges his sentence, the proper vehicle was either direct appeal or 28 U.S.C. § 2255, not compassionate release. *See*

6

*Thacker*, 4 F.4th at 574. But today he seems to be arguing that a change in the law has created a gross disparity in a likely sentence when he filed his compassionate release motion.

The court (via another presider) rejected a similar argument by Mr. Sotelo in his § 2255 petition. Then he cited *Johnson v. United States*, 576 U.S. 591, 606 (2015), which held that the residual clause in ACCA's definition of "violent felony" was unconstitutionally vague under the Fifth Amendment due process clause. The court explained that he was sentenced as a career offender via the sentencing guidelines (not ACCA), under which his offense was a crime of violence. *See United States v. Sullivan*, 75 F.3d 297, 300 (7th Cir. 1996) (threatening communications constitute "crimes of violence" for the purposes of U.S.S.G. § 4B1.1); *see also United States v. Poff*, 926 F.2d 588, 590 (7th Cir. 1991) (*en banc*) ("[t]hreats are themselves a form of violence").

For today's purposes, Mr. Sotelo has not identified a change in the law *vis-à-vis* the sentencing guidelines (only ACCA). It follows almost intuitively that his original sentence isn't unusually long compared to what would likely be imposed at the time of his current motion. Moreover, nothing has held that *Borden* applies retroactively, much less retroactively to the guidelines. "[J]udges must not rely on non-retroactive statutory changes or new judicial decisions when deciding whether an inmate has shown extraordinary and compelling reasons for relief." *United States v. Williams*, 65 F.4th 343, 347 (7th Cir. 2023) (quotation omitted). Altogether, and with no other means for compassionate release, Mr. Sotelo hasn't shown that his sentence alone, based on *Borden*, is an extraordinary and compelling reason warranting early release.

C. *COVID and Prison Conditions.*

Mr. Sotelo argues his medical conditions subject him to greater risks from contracting COVID, and he points generally to the harsh prison conditions during the associated pandemic. *See* U.S.S.G. § 1B1.13(b)(5) (circumstances "similar in gravity" to those described in

7

§ 1B1.13(b)(1)-(4) are extraordinary and compelling). Neither qualifies as a reason for early release on this record. The availability of vaccines typically disqualifies susceptibility to COVID as a justification for compassionate release, and Mr. Sotelo received his vaccine, hasn't argued he doesn't benefit from it, and doesn't otherwise present a uniquely significant risk even with it. *See United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

As to the state of prisons during the outbreak, the pandemic is over. Whatever conditions persisted in 2020-2022 are not the conditions in 2025. Nor are the assessment of medical risks. Mr. Sotelo has not explained, much less convincingly shown, why the general risk of COVID poses an extraordinary or compelling risk specific to him. Nor are generalized facility-wide conditions of confinement suitable for compassionate release. *See United States v. Bridgewater*, 995 F.3d 591, 599 (7th Cir. 2021); *see also United States v. Ryan*, 2024 U.S. App. LEXIS 5104, 5-6 (7th Cir. Mar. 1, 2024). Mr. Sotelo hasn't shown COVID-related circumstances similar in gravity to other bases for compassionate release.

D. *Rehabilitation.*

Mr. Sotelo also asks the court to consider his rehabilitation in conjunction with his other grounds. He says he has completed recidivism reduction programs, participated in prison mentorship, held a full-time job in prison, continues to work on his GED, and attends religious services and programming. That said, he has also accumulated ten infractions since 2020, including refusing work, refusing to obey an order, insolence toward staff, possession of narcotics (including heroin), possession of a dangerous weapon, stalking, and destruction of property [111-4 at 1-3]. He assaulted another inmate in 2016 [*id.* 4].

For what is good on this record, the court acknowledges Mr. Sotelo's rehabilitation efforts and that he tries at times to take steps in the right direction. But his infractions are deeply concerning. These infractions—which include drugs, weapons, and violence—are hardly indicative of rehabilitation for someone sentenced as a career offender and with his criminal history. Regardless, rehabilitation on its own is not extraordinary and compelling, 28 U.S.C. § 944(t), and it does not reach the threshold with the aid of his other arguments.

E.  *Section 3553(a).*

Extraordinary and compelling reasons aside, the § 3553(a) factors counsel firmly against release. The court of appeals described Mr. Sotelo as "a vicious and effective predator, even from the confines of a prison cell" for good reason. *Sotelo*, 94 F.3d at 1038. He was serving an aggregate 40-year prison sentence in Indiana for a woman's rape and robbery of an elderly couple when he courted, extorted, and then threatened the lives and wellbeing of one woman and her family. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). In the period between his indictment and sentencing, he extorted and threatened another woman and fellow inmates, relevant conduct that continues to distinguish him from superficially similar defendants. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(6).

Although his criminal history, before these extortionate and threatening communications, was confined to early adulthood and could be said to be less extensive than many federal offenders, its serious nature cannot be understated. *See* 18 U.S.C. § 3553(a)(1). He received six years on one armed robbery in 1984 only to turn around promptly in 1990 and commit another armed robbery and rape on two separate occasions. For his threats, the court sentenced him as a career offender who had more than the required number of prior violent felonies—alone demonstrating a real need for public protection and indeed incapacitation as a form of

9

deterrence—but, even then, he was "a predator whose behavior [was] only slowed, not stopped, by incarceration." *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C). From federal custody, his extortionate threats came in both letters and calls. He threatened the physical safety of a woman's daughter and two small grandchildren too. His conduct was originally treated, and remains today appropriately treated, as most serious and calls for the stoutest of deterrents. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (a)(2)(B). If serving four years into a 40-year aggregate sentence for serious crimes—themselves committed nearly back-to-back—had not taught him something, then his recidivism risk cannot be characterized as anything but alarming.

Mr. Sotelo's medical conditions and age (59) may generally have the effect of slowing him today, but his record demonstrates that, for him, slowing doesn't always mean stopping. *See* 18 U.S.C. § 3553(a)(1). His recent disciplinary history while incarcerated and his protestations that his crimes were nonviolent and weren't about extorting money from women but instead "about [him] not handling rejection well" [115 at 7-8] suggests that he hasn't yet reckoned fully with his offenses and that he continues to present a demonstrable risk to others and society. *See* 18 U.S.C. §§ 3553(a)(2)(A), (a)(2)(C).

Accordingly, the court DENIES the motion for compassionate release [104]. The court also GRANTS the government's motions to seal [110; 118].

SO ORDERED.

July 21, 2025                                  *s/ Damon R. Leichty*
                                               Judge, United States District Court